# *United States District Court*

_____ __MIDDLE__ _____    __DISTRICT OF__ _____ __ALABAMA__ _____

In the matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

**John Wayne Jordan, Jr.'s Office**
**Alabama Recycling**
**4040 Northern Boulevard**
**Montgomery, AL**

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

**CASE NUMBER:** 2:08mj10-SRW

I _____ Devin Whittle _____ being duly sworn depose and say:

I am a(n) __Special Agent, Drug Enforcement Administration__ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**John Wayne Jordan, Jr.'s Office**
**Alabama Recycling Inc.**
**4040 Northern Blvd.**
**Montgomery, Al**
**See Attachment C**

in the _____ Middle _____ District of _____ Alabama _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment B**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

**unlawfully possessing with the intent to distribute controlled substances**

concerning a violation of Title 21, United States Code, Section 841.

The facts to support the issuance of a Search Warrant are as follows:

**See Attachment A**

Continued on the attached sheet and made a part hereof:    ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

__2/4/08_____ at    __Montgomery, Alabama_____
Date                                              City and State

__SUSAN RUSS WALKER, U.S. Magistrate Judge__    _____
Name & Title of Judicial Officer                                Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF APPLICATION
ATTACHMENT A

I, Devin L. Whittle, Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA) being duly sworn, depose and state as follows:

1.    I am currently employed with the United States Drug Enforcement Administration (DEA), and have been so employed for the past eleven (11) years.  I am currently assigned to the New Orleans Division, the Montgomery District Office, the High Intensity Drug Trafficking Area (HIDTA) Task Force.    Prior to becoming a Special Agent, I was a Montgomery, Alabama, Police Officer for eight (8) years.  I have worked exclusively on narcotics investigations for eighteen (18) years.    I have investigated criminal violations of the Federal controlled substance laws, including, but not limited to, investigations involving smuggling of controlled substances, distribution of controlled substances in violation of Title 21, United States Code, Section 841; and laundering of the proceeds derived from the sale of controlled substances.

2.    I have conducted and participated in investigations that have resulted in the seizure of illegal drugs including, but not limited to, multiple kilogram quantities of cocaine, multi-kilogram quantities of marijuana, multi-

1

kilogram quantities of methamphetamine, large quantities of LSD and Methylenedioxymethamphetamine (MDMA), various designer drugs that are controlled substances, and millions of dollars in illegal drug proceeds. I am familiar with, and have participated in all of the normal methods of investigation, including, but not limited to, foot, auto, air and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, trap and traces, cellular telephone cite tracking, mobile tracking devices, the use of undercover agents, and the identification of co-conspirators through the use of drug ledgers, telephone records and bills, photographs and financial records.

3.    I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of importing and distributing narcotics, their use of telephones, cellular telephones and digital display paging devices and their use of numerical codes and code words to conduct their transactions. I have participated in numerous searches, pursuant to consents as well as warrants, for narcotics and other related drug trafficking contraband during my twenty years in law enforcement; in said searches, narcotics as well as currency, ledgers, logs, books, documents evidencing drug dealing and assets, pagers, cellular phones, and other

2

electronic devices (computers, fax machines) have been found.

4.    Based on my training, experience, and participation in investigations of traffickers in large quantities of methamphetamine and marijuana in the United States, in the tracings of proceeds on transactions involving illegal narcotics and in uncovering smuggling and distribution of illegal narcotics, I know that:

a.    Large scale narcotics traffickers must keep on hand large amounts of United States Currency in order to maintain and finance their ongoing drug business.

b.    Drug traffickers very often place their assets in the names of others, including parents, spouses, and children to avoid detection of these assets by law enforcement.

c.    Even though these assets are in other persons' names, the drug traffickers' continue to use these assets and exercise control over them.

d.    Drug traffickers encounter tremendous problems handling large sums of U.S. currency through financial institutions because of the currency transaction report which is required to be completed and filed with the Internal Revenue Service any time cash transactions exceed

$10,000, which causes them to maintain large amounts of cash in other, easy to access, but secure places (such as safe deposit boxes and safes).

**e.** Drug traffickers maintain telephone books, both personal and electronic, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale, purchase, and distribution of controlled substances.

**f.** These aforementioned telephone books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are stored and readily available to the drug traffickers in their houses, storage sheds, rental houses, safes, banks, safety deposit boxes and places of business.

**g.** It is common for large scale drug traffickers to secrete contraband, including controlled substances, proceeds from drug sales, including personal items, electronic items such as televisions, VCR's, stereos, and records of drug transactions in secure locations such as safes, lock boxes, safety deposit boxes in their names and relatives' names for ready access, and to conceal them from law enforcement.

**h.** Persons involved in drug trafficking conceal

in secure locations, with ease of access, large amounts of currency, financial instruments and evidence for financial transactions relating to the obtaining, transfer, secreting and spending of large sums of money    obtained    from engaging in drug trafficking activities.

i.    When drug traffickers amass large amounts of money from trafficking in illegal drugs, they attempt to hide their illegal origin. In order to accomplish this, they use banks, cashiers checks, money drafts, real estate and business fronts.

j.    Documents relating to such attempts to hide the illegal origin of such proceeds are kept where the traffickers have ready access to them, often in their houses or structures over which they have control, places of business, and often in close proximity to illegal drugs.

k.    It is common for drug traffickers to travel to major source of narcotics cities such as Miami, Florida, Atlanta, Georgia and Houston, Texas to receive drugs. These methods of transportation include commercial airlines, commercial vessels, private aircraft, rental vehicles, and other means of transportation.

l.    It is common for drug traffickers to keep

and maintain records of their travels in locations for easy access such as their residences, places of business and other structures over which they exercise control.

m.    Drug traffickers commonly maintain addresses or phone numbers in books, papers, compact electronic telephone books which show names, addresses, and/or telephone numbers for associates in the trafficking organization, and they keep such records in their homes, places of business or other structures over which they exercise control.

n.    Drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their drugs; they usually keep these photographs in their homes or places of business with other drug related documents.

o.    Drug traffickers often maintain and utilize cellular phones and pagers to facilitate drug trafficking. It is common for these communication devices to be listed in other persons' names.    However, drug traffickers continue to use these devices and maintain control over them.    Drug traffickers keep billing records for these mobile phones and pagers in their homes or businesses or other structures over which they exercise control so they are readily accessible.

6

**p.** It is common for drug traffickers to use cellular phones, fax machines, pay phones, and long distance calling card services to avoid detection and interception by law enforcement agents.

5. This affidavit is made in support of an application to search John Wayne Jordan, Jr.'s office at Alabama Recycling INC., located at 4040 Northern Boulevard in Montgomery, Alabama and to seize books, records, receipts, papers, notes, cash, ledgers, photographs, travel documents, personal telephone books, bank records, and other papers relating to the sale, purchase, and distribution of controlled substances in violation of Title 21 United States Code 841 (a)(1), and 846. I am also seeking evidence of occupancy and ownership of premises, and the location of any drug stash locations. The information in the paragraphs below which is furnished in support of this application, comes in part from agents and officers of the Drug Enforcement Administration (DEA), DEA Task Force Agents, Deputies of the Autauga County, Alabama Sheriff's Department and other Law Enforcement Agencies and by the analysis of surveillance, information from reliable informants, and the use of public records, as well as searches of criminal justice background indices concerning

the narcotics trafficking activities of John Wayne JORDAN
Jr. and his drug associates.


7.    I have investigated and I continue to
investigate a drug distribution operation headed by John
Wayne JORDAN Jr., other known and unknown individuals.
This organization is responsible for the distribution of
multi-pound quantities of methamphetamine in the Middle
District of Alabama.


8.  Alabama Recycling INC., is located at 4040
Northern Boulevard in Montgomery, Alabama on the South side
of the Northern Boulevard.  According to the Confidential
Source, Jordan's office is located in the first building on
the property with the address of 4040 Northern Boulevard,
Montgomery, Alabama.  (NOTE:  the confidential source
initially told agents that Jordan's office was located at
Circle J Roll Offs INC at 4040 Northern Boulevard,
Montgomery, Alabama.  Agents further investigation revealed
that Circle J is actually owned by Jordan's father and that
Jordan's office is located next door to Circle J, but at
the same address of 4040 Northern Boulevard.  The
confidential source's description of Jordan's office is
consistent with the building that houses Alabama Recycling

8

located at 4040 Northern Boulevard.  Further, the
confidential source identified the building in a satellite
photograph.  See Attachment C.)  The building is actually
an open shed with the only walls in the building
surrounding Jordan's office.  As one walks under the shed,
one can see a set of stairs going up, that end at the door
to the office. On January 23, 2008, the CS was shown a
satellite photograph of 4040 Northern Boulevard.  The CS
initialed the building that contains Jordan's office.  (See
Attachment C)  The facts tending to support these claim are
as follows:


9.  On January 16, 2008, Special Agent Devin Whittle
and Task Force Agent Eddie Spivey interviewed a
confidential and reliable source, hereafter referred to as
the CS.  Your affiant is aware of the fact that the CS has
provided accurate and reliable information regarding this
investigation.  Further, your affiant is not aware of any
misleading or false information that that CS has provided
DEA regarding the sale, distribution or trafficking of
controlled substances.  The CS has no criminal history.


10.  According to the CS, approximately three months
ago, the CS traveled to Atlanta, Georgia with Thomas

HUBBARD for the purpose of purchasing and transporting
methamphetamine back to Montgomery, Alabama.  Your
affiant's investigation has identified HUBBARD and
determined that HUBBARD has a criminal history.  On
February 27, 1999, HUBBARD was arrested for possession of
marijuana 2nd.  On July 1, 2006, HUBBARD was arrested for
possession and receipt of controlled substances, public
intoxication, use and possession of drug paraphernalia, and
trafficking in methamphetamine.  On July 12, 2006, HUBBARD
was arrested for possession of a controlled substance and
unlawful distribution of a controlled substance.  Further,
the CS stated that the CS and HUBBARD traveled to an
apartment complex in Atlanta, Georgia and met with an
unknown Mexican male known as "AMIGO".  The CS stated that
"AMIGO" entered the vehicle and HUBBARD exchanged money for
drugs.  After the transaction with "AMIGO", the CS and
HUBBARD returned to Montgomery, Alabama.  They traveled to
Jordan's office at 4040 Northern Boulevard in Montgomery,
Alabama and gave the Methamphetamine to John JORDAN Jr.
Your affiant is aware of the fact that JORDAN has a
criminal history.  On May 24, 1993, JORDAN was arrested by
the Montgomery, Alabama Sheriff's Department for unlawful
distribution of a controlled substance.  On April 28, 1995,
JORDAN was charged by the Alabama Department of Corrections

10

with distribution of a controlled substance.    On November 24, 1997, JORDAN was arrested by the Montgomery, Alabama Sheriff's Department for distribution of a controlled substance.    On January 16, 1998, JORDAN was arrested by the Montgomery, Alabama County Sheriff's Office for probation violation.    On February 10, 1998, JORDAN was arrested by the Montgomery, Alabama Sheriff's Department for probation violation.    On June 8, 1998, JORDAN was arrested by the Montgomery, Alabama Sheriff's Department for distribution of a controlled substance.    On December 12, 2005, JORDAN was arrested by the Meriwether County, Georgia Sheriff's Department for trafficking in methamphetamine and fleeing or attempting to elude a police office.    The CS stated that the amount of methamphetamine HUBBARD received from AMIGO appeared to be approximately one pound.    The CS stated that John Wayne JORDAN Jr. paid him/her $200.00 for making the trip to Atlanta, Georgia.

11.    According to the CS, on January 11, 2008, the CS and John Wayne JORDAN Jr. traveled to Atlanta, Georgia for the purpose of purchasing methamphetamine.    The CS stated that the vehicle they traveled to Atlanta, Georgia in was a 2004, Red, Ford pick up truck that belonged to JORDAN. Your affiant's investigation has determined that John Wayne

JORDAN Jr. has a red, F-150, Ford pick up truck registered

to him under Alabama license plate 49632AN.  The CS stated

that the CS and JORDAN traveled to the same apartment

complex the CS and Thomas HUBBARD traveled to (see

paragraph 10) and met with "AMIGO".  The CS stated that

JORDAN exchanged money for drugs with "AMIGO".    In

addition, the CS stated that, the CS and JORDAN returned to

Montgomery, Alabama with approximately one pound of

methamphetamine.   The CS stated that, the CS and JORDAN

ended up at Jordan's office located at 4040 Northern

Boulevard in Montgomery, Alabama.  The CS stated that

JORDAN "broke down" the methamphetamine

(Your affiant is aware of the fact that the term "broke

down" the drugs means to process the drugs for

distribution, by weighing and packaging the drugs) on his

desk located inside of his office.  The CS stated that

JORDAN has digital scales, clear plastic bags and "cut"

stored in a safe located in his office.  (NOTE: Your

affiant is aware of the fact that the term "cut" refers to

a substance used to dilute the purity of methamphetamine.

This increases the weight of the methamphetamine and

therefore increasing the dealer's profits.  A common agent

used for "cutting" is MSN).  Further, the CS stated that

the CS has observed bottles of acetone in JORDAN'S office.

The CS stated that John Wayne JORDAN Jr. uses acetone to "wash" his personal use methamphetamine. (NOTE: Your affiant is aware of the fact that methamphetamine traffickers/users will use acetone to burn off the "cut" in methamphetamine they have purchased, therefore making the methamphetamine lighter, but more pure). The CS also stated that the CS has observed "IOUs" in JORDAN'S safe and desk drawer. The CS stated that the IOUs were to remind JORDAN of money he was owed by individuals he had furnished methamphetamine. The CS stated that JORDAN keeps some of the money has made from the sale of methamphetamine in a locked desk drawer in his office. Further, the CS stated that JORDAN keeps some of the money made from the sale of methamphetamine in a safe located in his office at the 4040 Northern Boulevard. Lastly, the CS stated that he/she received $300.00 for traveling to Atlanta, Georgia with JORDAN.

12. On February 2, 2008, your affiant and other agents conducted surveillance on the CS and John Wayne JORDAN Jr. as they traveled to Atlanta, Georgia for the purpose of purchasing methamphetamine. JORDAN contacted the CS and requested the CS meet him at his office at 4040 Northern Boulevard around 11:00 a.m. At approximately 11:05 a.m.,

Central Standard Time (CST), the CS arrived at Jordan's

office, located at 4040 Northern Boulevard in Montgomery,

Alabama. At approximately 11:24 a.m., John Wayne JORDAN

Jr. arrived at the office. According to the CS, JORDAN

left the door of his office unlocked so the CS could get

in. Further, the CS stated that when JORDAN arrived, he

removed money from the safe in his office and placed it

inside of a bank bag. At approximately 12:05 a.m., the CS

and JORDAN departed Jordan's office. JORDAN drove his red,

F-150, Ford pick-up truck registered to him under Alabama

license plate 49632AN. JORDAN and the CS departed

Montgomery traveling to Atlanta, Georgia. JORDAN stopped

his vehicle near the Alabama/Georgia state line and the CS

began to drive the vehicle. The CS and JORDAN traveled to

the same apartment complex in Atlanta, Georgia described by

the CS in paragraphs 10 and 11. Atlanta agents observed a

Hispanic male approach JORDAN'S vehicle. The CS later

stated that "AMIGO" entered the back seat of the truck and

JORDAN exchanged money for drugs. JORDAN then drove the

truck to the Galleria mall located near Interstate 75 and

the 285 loop in Atlanta, Georgia. JORDAN and the CS

checked into a room at the Sheraton Suites Galleria-Atlanta

located at 2844 Cobb Parkway S.E in Atlanta, Georgia. The

CS stated that JORDAN took out the methamphetamine he

14

purchased from "AMIGO" and tested it for purity.  The CS
stated that he smoked some methamphetamine because JORDAN
thought it was strange that the CS did not want to smoke
the methamphetamine with him, as the CS had done in the
past.  The CS stated that JORDAN accused the CS of being
the "police".  The CS stated that the CS felt compelled to
smoke one hit of the methamphetamine.  After approximately
one and a half hours, the CS and JORDAN departed the motel
with JORDAN driving the truck.  JORDAN and the CS traveled
to Union City, Georgia located off of Interstate 85 and
exited the Interstate.  JORDAN and the CS stopped at Shell
gas station located near the Interstate.  According to the
CS, the CS purchased a pack of cigarettes.  The CS and
JORDAN departed the Shell gas station with the CS driving
the vehicle.  The CS and JORDAN traveled South on
Interstate 85 to a rest area located just West of Auburn,
Alabama.  At that location, agents had an Alabama State
Trooper activate his emergency equipment and stop the CS
and JORDAN in the rest area.  The Trooper separated the CS
and JORDAN and asked the CS where the methamphetamine was
located.  The CS stated that the CS believed it was located
in JORDAN'S pants.  Two agents approached to assist the
Trooper with locating the methamphetamine.  After a few
minutes, agents located approximately four ounces of

15

methamphetamine inside of John Wayne JORDAN'S pants.  A
subsequent search of JORDAN'S vehicle revealed a zip up
bank bag with a small amount of cash inside.  Agents
arrested JORDAN and transported him to Montgomery, Alabama.
A field test conducted on the methamphetamine was positive.


**WHEREFORE**, based upon the foregoing, your Affiant
submits that probable cause exists to believe that there
are enumerated papers, documents, photographs, books,
ledgers, U.S. Currency, and pagers, more particularly
described in Attachment B, located at and within the
premises above described in paragraph 8.

_____
Devin Whittle
Special Agent
Department of Justice
Drug Enforcement Administration


SWORN TO AND SUBSCRIBED before me on the _HH_ day of
February, 2008.

_____
Susan Russ Walker
United States Magistrate Judge


16

**ATTACHMENT B**

**PROPERTY TO BE SEIZED**

(1)    Books, records, ledgers, and/or writings which record the receipt and/or distribution of controlled substances including marijuana as well as any other memoranda relating to the transportation, ordering, purchase, delivery and/or distribution of controlled substances, which writings and records are contraband as well as evidence;

(2)    Papers, tickets, notes, schedules, receipts, and other writings and objects including but not limited to gasoline receipts, air travel vouchers, and motel/hotel embossed articles, which do or tend to establish domestic and/or interstate travel in interstate commerce;

(3)    Addresses and/or telephone books and papers and other writings reflecting names, addresses, and/or telephone numbers as well as bills and paid receipts reflecting telephone toll records, any and all of which reflect the names, addresses, and telephone numbers of aliases or code names of both known and unknown co-conspirators in the above-described criminal activity, as well as other indicia of telephone usage and service including pay telephone usage which indicia includes, but is not limited to, telephone credit cards, large amounts of nickel, dime and/or quarter currency, and telephone paging devices which are carried on or about the persons to receive incoming notice or messages and which are activated by telephone usage;

(4)    Currency of the United States including paper and coin currency, also precious metals, jewelry, financial instruments, including but not limited to, negotiable commercial paper, and currency obtained, connected with and/or possessed to facilitate the financing of illicit drug trafficking;

(5)    Photographs and videotapes, in particular, photographs or videotapes of co-

conspirators, of assets, and/or of controlled substances;

(6)    Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items and/or important documents including books, records, and other writings as well as United States currency as described above, and any keys or other evidence of the existence and usage of any lockers, safety deposit boxes or other secure receptacles situated elsewhere than at defendant property;

(7)    Articles of false identification;

(8)    Radio electronic equipment including but not limited to transceivers, receivers, scanners, antennae, RF detectors, walkie talkies, wireless transmitters as well as other electronics which are used ancillary to such equipment, including but not limited to, electrical calibration equipment, meters and test equipment;

(9)    Computers or other electronic devices which are capable of storing information, including, but not limited to computers, lap tops, floppy disks, cd roms, zip disks, hard drives, and personal data assistants (PDA).

(10)    Firearms;

(11)    Controlled substances;

(12)    Paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including but not limited to, scales, bags, pipes, and duct tape;

(13)    Any and all other material evidence of violations of Title 21, United States Code, Sections 841 (a) (1) and 846, together with fruits, instrumentalities and evidence of crimes at this time unknown.

# ATTACHMENT C

**Live Search Maps**



JOHN'S OFFICE

M-6 - OFFICE -

1/23/08